MURDOCK, Justicé
(dissenting in case nos. 1130987 and 1131021).
It appears to me that House Bill 84 was amended to serve a different “purpose” (albeit within the general “subject” of improving education) than that which characterized the bill as originally introduced and thereby violates Art. IV, § 61, Ala. Const. 1901. . As a corollary, it also appears to me that the “three-readings” requirement of Art. IV, § 63, of the Alabama Constitution was not met. In addition, to the extent that the Alabama Accountability Act provides for the payment of funds to parents in excess of the parents’ tax liabilities, I am concerned that it does so under condi *145 tions as to the expenditure of' those funds that effectively violate, or contemplates a violation of, Art, IV, § 73, Ala. Const.1901. I, therefore, respectfully dissent as to case nos. 1130987 and 1131021.

APPENDIX A

Original Version of HB 84 ENGROSSED
A BILL
TO BE ENTITLED AN ACT
To establish the Local Control School Flexibility Act of 2013, relating to public K-12 education; to authorize the establishment of innovative schools and school systems in the state; to provide legislative findings and purposes; to provide an overview; to authorize the State Board of Education to enter into school flexibility contracts with local school systems; to require the local board of education to submit a document of assurance; to require the State Board of Education to promulgate rules and regulations relating to innovative school systems; to require local school systems to submit an innovation plan to the State Department of Education in order to qualify for innovation status; and to provide for an effective date.
BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
Section 1. This act shall be known and may be cited as the Local Control School Flexibility Act of 2013.
Section 2. (a) Innovative schools and school systems may be established in Alabama in accordance with this act.
(b) The purpose of this act is to advance' the benefits of local school and school system autonomy in innovation and creativity by allowing flexibility from state laws, regulations, and policies.
Section 3. (a) The Legislature finds and declares all of the following:
(1) To further the goals of public education throughout the state, each school system should be able to have maximum possible flexibility to meet the needs of students and the communities within its jurisdiction.
(2) There is a critical need for innovative models of public education that are tailored to the unique circumstances and needs of the students in all schools and communities, and especially in schools and communities that are struggling to improve academic outcomes and close the achievement gap.
(3) To better serve students and better use available resources, local boards of education and local school systems need the ability to explore flexible alternatives in an effort to be more efficient and effective in providing operational and programmatic services. ■
(b) Therefore, it is the intent of the Legislature to do all of the following:
(1) Allow school systems greater flexibility in meeting the educational needs of a diverse student population.
(2) Improve educational performance through greater individual school autonomy and managerial flexibility with regard to programs and budgetary matters.
(3) Encourage innovation in education by providing local school systems and school administrators with greater control over decisions including, but not limited to, budgetary matters, staffing, personnel, scheduling, and educational programming, including curriculum and instruction.
Section 4. For the purposes of this act, the following terms shall have the following meanings:
(1) FLEXIBILITY CONTRACT. A school flexibility contract between the local *146 school system and the State Board of Education wherein a local school system may apply for programmatic flexibility or budgetary flexibility, or both, from state laws, regulations, and policies, including regulations and policies promulgated by the State Board of Education and the State Department of Education.
(2) INNOVATION PLAN. The request of a local school system for flexibility and plan for annual accountability measures and five-year targets for all participating schools within the school system.
(3) LOCAL BOARD OF EDUCATION. A city or county board of education that exercises management and control of a local school system pursuant to state law.
(4) LOCAL SCHOOL SYSTEM. A public agency that establishes and supervises one or more public schools within its geographical limits pursuant to state law.
(5) SCHOOL ADMINISTRATOR. A local superintendent of education or local school principal, unless otherwise specified.
Section 5. (a) Pursuant to this act, to be considered as an innovative school system, a local school system shall successfully comply with the requirements and procedures set forth by the State Department of Education regarding school flexibility contracts, which include, but are not limited to:
(1) Submission to the State Department of Education of a letter of intent to pursue a school flexibility contract.
(2) Submission to the State Department of Education of a resolution adopted by the local board of education supporting the intent of the local school system to pursue a school flexibility contract.
(3) Submission to the State Department of Education of a document of assurance stating that the local board of education shall provide consistency in leadership and a commitment to state standards, assessments, and academic rigor.
(4)Submission to the State Board of Education of a resolution adopted by the local board of education supporting the flexibility contract proposal and the anticipated timeline of the local school system.
(b) Pursuant to State Board of Education rules, each local school system shall provide an opportunity for full discussion and public input, including a public hearing, before submitting a school flexibility contract proposal to the State Board of Education.
(c) A local school system shall ensure that its school flexibility contract proposal and innovation plan is easily accessible to the general public on the website of the local school system.
Section 6. (a) The innovation plan of a local school system shall include, at a minimum, all of the following:
(1) The school year that the local school system expects the school flexibility contract to begin.
(2) The list of state laws, regulations, and policies, including rules, regulations, and policies promulgated by the State Board of Education and the State Department of Education, that the local school system is seeking to waive in its school flexibility contract.
(3) A list of schools included in the innovation plan of the local school system.
(b) A local school system is accountable to the state for the performance of all schools in its system, including innovative schools, under state and federal accountability requirements.
(c) A local school system may not, pursuant to this act, waive requirements imposed by federal law, requirements related to the health and safety of students *147 or employees, requirements Imposed by ethics laws, requirements imposed by open records or open meetings laws, requirements related to financial or academic reporting or transparency, requirements designed to protect the civil rights of students or employees, requirements related to- participation in ■ a the state retirement system or state health insurance plan, or requirements imposed by Section 16-13-231, Code of Alabama 1975. This act may not be construed to allow a local school system -to-compensate a current employee at an annual rate that -is-less than --the — amount the current employee local school system to compensate an employee at an annual amount that is less than the amount the employee would otherwise be afforded through the State Minimum Salary Schedule included in the annual Education Trust Fund Appropriations Act in force at the time. Additionally, this act may riot be construed to allow a local school system to require any employee or future employee who attains tenure or nonprobationary status to involuntarily relinquish any rights or privileges acquired by that employee as a result of attaining tenure or nonproba-tionary status under the Students First Act.

No provision of this act shall be construed or shall be used to authorize the formation of a charter school.

(d)Nothing in this act shall be construed to prohibit the approval of a flexibility contract that gives potential, current, or future employees the option to voluntarily waive any rights or privileges already acquired or that could potentially be acquired as a result of attaining tenure or nonprobationary status, provided, however, that any employee provided this option is also provided the option of retaining or potentially .obtaining any rights or privileges provided under the Students First Act, Chapter 2IC of Title 16, Code of Alabama 1975.

4d) (e) The State Department of Education shall finalize all school data and the local school system shall seek approval of the local board of education before final submission to the State Department of Education and the State Board of Education.
(e) (f) The final innovation plan, as recommended by the local superintendent of education and approved by the local board of education, shall accompany the formal submission of the local school system to the State Department of Education.
# (g) Within 60 days of receiving the final submission, the State Superintendent of Education shall decide ivhether or not the school flexibility contract and the innovation plan should be approved. If the State Superintendent of Education denies a school flexibility contract and innovation plan, he or she shall provide a written explanation for his or her decision to the local board of education. Likewise, a written letter of approval by the State Superintendent of Education shall be provided to the local board of education that submitted the final school flexibility contract and innovation plan.
(f) (g) (h) The State Board of Education shall promulgate any necessary rules and regulations required to implement this act including, but not limited to, all of the following:
(1) The specification of timelines for submission and approval of the innovation plan and school flexibility contract of a local school system.
(2) An authorization for the State Department of Education, upon approval by the State Board of Education after periodic review, to revoke a school flexibility *148 contract for noncompliance or nonperformance, or both, by a local school system.
(3) An outline of procedures and necessary steps that a local school system shall follow, upon denial of an original submission, to amend and resubmit an innovation plan and school flexibility contract for approval.
Section 7. The State Board of Education and the State Department of Education shall ensure equal opportunity for all school systems that apply for programmatic flexibility or budgetary flexibility, or both, as delineated in this act, and in no way shall one local school system be favored over another local school system based upon its size, location, student population, or .any other possible discriminatory measure.
Section 8. This act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law.

APPENDIX B

Substitute' Version of HB 84
ENROLLED, An Act,
To establish the Alabama Accountability Act of 2013, relating to public K-12 education; to authorize the establishment of innovative schools and school systems in the state; to provide legislative findings and purposes; to provide an overview; to authorize the State Board of Education to enter into school flexibility contracts with local school systems; to require the local board of education to submit a document of assurance; to require the State Board of Education to promulgate rules and regulations relating to innovative school systems; to require local school systems to submit an innovation plan to the State Department of Education in order to qualify for innovation status; to provide an income tax credit to any parent who transfers a student enrolled in or assigned to attend a failing public K-12 school to a nonfailing public school or nonpublic school of the parent’s choice; to limit the income tax credit to 80 percent of the average annual state cost of attendance; to create within the Education Trust Fund the Failing Schools Income Tax Credit Account; and to authorize the Comptroller to annually transfer into the account proceeds from sales tax revenues in an amount sufficient for the Department of Revenue to pay the income tax credits; to authorize a tax credit for contributions to organizations that provide educational scholarships to qualifying schools; to provide for the responsibilities of scholarship organizations; to provide for oversight of participating schools; to provide for the responsibilities of the Department of Revenue; and to provide for an effective date.,
BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
Section 1. This act. shall be known and may be cited as the Alabama Accountability Act of 2013.
Section 2. (a) Innovative schools and school systems may be established in Alabama in accordance with this act. ■
(b) The purpose of this act is to advance the benefits of local school and school system autonomy in innovation and creativity by allowing flexibility from state laws, regulations, and policies.
Section 3. (a) The Legislature finds and declares all of the fohowing:
(1) To further the goals of public education throughout the state, each school system should be able to have maximum possible flexibility to meet the needs of students, and the communities within its jurisdiction.
(2) There is a critical need for innovative models of public education that are *149 tailored to the unique circumstances and needs of the students in all schools and communities, and especially in schools and communities that are struggling to . improve academic outcomes and close the achievement gap.
(3)To better serve students and better use available resources, local boards of education, local school systems, and parents need the ability to explore flexible alternatives in an effort to be more efficient and'effective in providing operational and programmatic services.
(b) Therefore, it is the intent of the Legislature to do all of the following:
(1) Allow school systems greater flexibility in meeting the educational needs of a diverse student population.
(2) Improve educational performance through greater individual school autonomy and managerial flexibility with regard to programs and budgetary matters.
(3) Encourage innovation in education by providing local school systems and school administrators with greater control over decisions including, but not limited to, budgetary matters, staffing, personnel, scheduling, and educational programming, including curriculum and instruction.
(4) Provide financial assistance through an income tax credit to a parent who transfers a student from a failing public school to a nonfailing public school or nonpublic school of the parent’s choice.
Section 4. For the purposes of this act, the following terms shall have the following meanings:
(1) EDUCATIONAL SCHOLARSHIPS. Grants to any qualifying school to cover all or part of the tuition and fees at the school for an eligible student.
(2) ELIGIBLE STUDENT. A student who satisfies all of the following:
a. Is a member of a household whose total annual income the year before he or she receives an educational scholarship under this program does not exceed an amount equal to 150 percent of the median household income. Once a student- receives. an educational scholarship under this program, the student, shall remain eligible regardless of household income until the student graduates high school or reaches 19 years of age.
b. Was eligible to attend a public school in the preceding semester or is starting school in Alabama for the first time.
c. Resides in Alabama while receiving an educational scholarship.
(3) FAILING SCHOOL. A public K-12 school that is labeled as persistently low-performing by the State Department of Education, in the then most recent United States Department of Education School Improvement Grant application; that is listed in the lowest ten percent of public K-12 schools on the state standardized assessment in reading and math; that has earned a grade of “F” or three consecutive grades of “D” pursuant to Section 16-6C-2, Code of Alabama 1975; or that is designated a failing school by the State Superintendent of Education. - ■
(4) FLEXIBILITY CONTRACT. A school flexibility contract between the local school system and the State Board of Education wherein a local school system may apply for programmatic flexibility or budgetary flexibility, or both, from state laws, regulations, and policies, including regulations and policies promulgated by the State Board of Education and the State Department of Education.
(5) INNOVATION PLAN. The request of a local school system for flexibility and plan for annual accountability' measures *150 and -five-year targets for all participating schools within the school system.
(6) LOCAL BOARD OF EDUCATION. A city or county board of education that exercises management and control of a local school system pursuant to state law.
(7) LOCAL SCHOOL SYSTEM. A public agency that establishes and supervises one or more public schools within its geographical limits pursuant to state law.
(8) LOW-INCOME ELIGIBLE STUDENT. A student of a family with income less than two times the federal poverty level.
(9) NONPUBLIC SCHOOL. Any nonpublic or priváte school, including parochial schools, not under the jurisdiction of the State Superintendent of Education and the State Board of Education, providing educational services to children.. A nonpublic school is accredited by a state recognized accrediting agency that provides education to elementary or secondary, or both, students and has notified the State Department of Revenue of its intention to participate in the scholarship program and comply with the requirements of the scholarship program. A nonpublic school does not include home schooling.
(10) PARENT. The parent or 'legal guardian of a student, with authority to act on behalf of the student, who claims the student as a dependent on his or her federal income tax return.
(11) QUALIFYING SCHOOL. • Either a public school outside of the resident school district that is not considered failing under either state or federal standards or any nonpublic school as defined in this act or that satisfies the compulsory attendance requirements provided in Section 16-28-7, Code of Alabama 1975. A qualified nonpublic school 'shall be accredited by one of the six regional accrediting agencies of, if not so accredited, shall - satisfy all of the following conditions:
a. Be in existence for at least three years.
b. Have daily attendance of at least 85 percent over a two-year period.
c. Have a minimum 180-day school year, or its hourly equivalent.
d. Have a day length of at least six and one-half hours.
e. Require all students to take the Stanford Achievement Test, or its equivalent.
f. Require all candidates for graduation to take the American College Test before graduation.
g. Require students in high school in grades nine through 12 to earn a minimum of 24 Carnegie credits before graduating, including 16 credits in core subjects and additional requirements in health and physical education, fine arts, computer studies, and foreign language.
h. Not subject special education students to the same testing or curricular requirements as regular education students if it is not required in the individual plan for the student.
i. Maintain a current website that describes the school and the instructional program of the school.
j. Annually affirm on forms prescribed by the scholarship granting organization and the department its status financially and academically and provide other relative information as required by the scholarship granting organization or as -otherwise required in this act.
(12)SCHOLARSHIP GRANTING ORGANIZATION. An organization that provides or is approved to provide educational scholarships to students attending qualifying schools of their parents’ choice.
*151 (IB) SCHOOL ADMINISTRATOR. A local superintendent of education or local school principal, unless otherwise specified.
Section 5. (a) Pursuant to this act, to be considered as an innovative school system, a local school system shall successfully comply with the requirements and procedures set forth by the State Department of Education regarding school flexibility contracts, which include, but are not limited to:
(1) Submission to the State' Department of Education of a letter of intent to pursue a school flexibility contract.
(2) Submission to the State Department of Education of a resolution adopted by the local board of education supporting the intent of the local school system to pursue a school flexibility contract.
(3) Submission to the State Department of Education of a document of assurance stating that the local board of education shall provide consistency in leadership and a commitment to state standards, assessments, and academic rigor.
(4) Submission to the State Board of Education of a resolution adopted by the local board of education supporting the flexibility contract proposal and the anticipated timeline of the local school system.
(b) Pursuant to State Board of Education rules, each local school system shall provide an opportunity for full discussion and public input, including a public hearing, before submitting a school flexibility contract proposal to the State Board of Education.
(c) A local school system shall ensure that its school flexibility contract proposal and innovation plan is easily accessible to the general public on the website of the local school system.
■ Section. 6. (a) The innovation plan of a local school system shall include, at a minimum, all of the following:
(1) The school year that the local school system expects the school flexibility contract to begin.
(2) The list of state laws, regulations, and policies, including rules, regulations, and policies promulgated by the State Board of Education and the State Department of Education, that the local school system is seeking to waive in its school flexibility contract.
(3) A list of schools included in the innovation plan of the local school system.
- (b) A local school system is accountable to the state for the performance of all schools in its system, including innovative schools, under state and federal accountability requirements.
(c) A local school system may not, pursuant to this act; waive requirements imposed by federal law, requirements related to the health and safety of students or employees, requirements imposed by ethics laws, requirements imposed by the Alabama Child Protection Act of 1999, Chapter 22A, Title 16, Code of Alabama 1975, requirements imposed by open records or open meetings laws, requirements related to financial or academic reporting or transparency, requirements designed to protect the civil rights of students or employees, requirements related to the state retirement system' or state health insurance plan, or requirements imposed by Act 2012-482. This act may not be construed to allow a local school system to compensate an employee at an annual amount that is less than the amount the employee would otherwise be afforded through the State Minimum Salary Schedule included in the annual Education Trust Fund Appropriations Act. No local school system shall involuntarily remove any rights or *152 privileges acquired by any employee under the Students First Act of 2011, Chapter 24C, Title 16, Code of Alabama 1975. Except as provided for a failing school pursuant to subsection (e), no plan or program submitted by a local board of .education may be used to deny any right or privilege granted to a new employee pursuant to the Students First Act of 2011.
(d) No provision of this act shall be construed or shall be used to authorize the formation of a charter school.
(e) Any provision of subsection (c) to the contrary notwithstanding, nothing in this act shall be construed to prohibit the approval of a flexibility contract that gives potential, current, or future employees of a failing school within the local school system the option to voluntarily waive any rights or privileges already acquired- or that could potentially be acquired as a result of attaining tenure or nonprobation-ary status, provided, however, that any employee provided this option is also provided the option of retaining or potentially obtaining any rights or privileges provided under the Students First Act, Chapter 24C of Title 16, Code of Alabama 1975.
(f)' The State Department of Education shall finalize all school data and the local school system shall seek approval of the local board of education before final submission to the State Department of Education and the State Board of Education.
(g) The final innovation plan, as recommended by the local superintendent of education and approved by the local board of education, shall accompany the formal submission of the local school systernto the State Department of Education.
(h) Within 60 days of receiving the final 'submission, thé State Superintendent of Education shall decide whether or not the school flexibility contract and the innovation plan should be approved. If the State Superintendent of Education denies a school flexibility contract and innovation plan, he or she shall provide a written explanation for his or her decision to the local board of education. Likewise, a written letter of approval by the State Superintendent of Education shall be provided to the local board of education that submitted the final school flexibility contract and innovation plan.
(1) The State Board of Education shall promulgate any necessary rules and regulations required to implement this act including, but not limited to, all of the following:
, (1) The specification of timelines for submission and approval of the innovation plan and school flexibility contract of a local school system.
(2) An authorization for the State Department of Education, upon approval by the State Board of Education after periodic review, to revoke a school flexibility contract for noncompliance or nonperformance, or both, by a local school system.
(3) An outline of procedures and neces-saiy steps that a local school system shall follow, upon denial of an original submission, to amend and resubmit an innovation plan and school flexibility contract for approval.
Section 7. The State Board of Education and the State Department of Education shall ensure equal opportunity for all school systems that apply for programmatic flexibility or budgetary flexibility, or both, as delineated in this act, and in no way shall one local school system be favored over another local school system based upon its size, location, student population, or any other possible discriminatory measure.
*153 Section 8. (a) To provide educational-flexibility arid state accountability for students in failing schools:
(1) For tax years beginning on and after January 1, 2013, an Alabama income tax credit is made available to the parent of a student enrolled in or assigned to attend a failing school to help offset the cost of transferring the student to a nbnfailing public school or nonpublic school of the parent’s choice. The income tax credit shall be an amount equal to 80 percent of the average annual state cost of attendance for a public K-12 student during the applicable tax year or the actual cost of attending a nonfailing public school or nonpublic school, whichever is less. A parent is allowed a credit against income tax for each taxable year under the terms established in this section. If income taxes owed by the parent are less than the total credit allowed under this subsection, the taxpayer shall be entitled to a refund or rebate, as the case may be, equal to the balance of the unused credit with respect to that taxable year. . • -
(2) Any income tax credit due a parent under this sectiofi shall be granted or issued to the parent only upon his or her making application therefor, at such time and in such 'manner as may be prescribed from time to time by the Department of Revenue. The application process shall include, but not be limited to, certification by the parent that the student, was enrolled in or was assigned to attend a failing school, certification by the parent that the student was subsequently transferred to, and was enrolled and attended, a nonfail-ing public school or nonpublic school of the parent’s choice, and proof, satisfactory to the Department of Revenue, of the actual cost of attendance for the student at the nonfailing public school or nonpublic school. 'The Department of Revenue shall also prescribe the various methods by which income tax credits are to be issued to taxpayers. Income tax credits authorized by this section shall be paid out of sales tax collections, made to the Education Trust Fund,.and set aside,by the Comptroller in the Failing School Tax Credit Account created in subsection (c), in the same manner as refunds of income tax otherwise provided by law, and there is hereby appropriated therefrom, for such purpose, so much as may be necessary to annually pay the income tax credits provided by this section.
(3)An application for an income tax credit authorized by this section shall be filed with the Department of Revenue within the time prescribed for filing petitions for refund under Section 40-2A-7, Code of Alabama 1975.
' (4) The Department of Revenue shall promulgate reasonable rules to effectuate the intent of this section.
(b)(1) The parent of a public school student may request and receive an income tax credit pursuant to this section to reimburse the parent for costs associated with transferring the student from a failirig school to a nonfailing public school or nonpublic school of the parent’s choice, in any of the following circumstances:
a. By assigned school attendance area, if the student spent the prior school year in attendance at a failing school and the attendance of the student occurred during a school year in which the designation was in effect.
b. The student was in attendance elsewhere in the Alabama public school system and was assigned to a failing school for the next school year.
c. The student was notified that he or she was assigned- to a failing school for the next school year.
*154 (2) This section does not apply to a student who is enrolled in the Department of Youth Services School District.
(3) For the purposes of continuity of educational choice, the tax credit shall be available to parents for those grade levels of the failing school from which the student transferred. The parent of a student who transfers from a failing school may receive income tax credits for those grade levels enrolled in and attended in the non-failing public school or nonpublic school of the parent’s choice transferred to that were included in the failing school from which the student transferred, whether or not the failing school becomes a nonfailing school during those years. The student shall return to his or her original local school system of attendance when he or she completes the highest grade level of the failing school transferred from in the nonfailing public school or nonpublic school of the parent’s choice. If the public school the student returns to is a failing school, the parent may again transfer the student to a nonfailing public school or nonpublic school of the parent’s choice and request and receive an income tax credit as provided in this section.
(4) A local school system, for each student enrolled in or assigned to a failing school, shall do all of the following:
a. Timely notify the parent of the student of all options available under this section as soon as the school of attendance is designated as a failing school.
b. Offer the parent of the student an opportunity to enroll the student in another public school within the local school system that is not a failing school or a failing school to which the student has been assigned.
(5) The parent of a student enrolled in or assigned to a school that has been designated as a failing school, as an alternative to paragraph b. of subdivision (4), may choose to enroll the student in and transport the student to a nonfailing public school that has available space in any other local school system in the state, and that local school system is willing to accept the student on whatever terms and conditions the system establishes and report the student for purposes of the local school system’s funding pursuant to the Foundation Program.
(6) For students in the local school system who are participating in the tax credit program, the local school system shall provide locations and times to take all statewide assessments required by law.
(7) Students with disabilities who are eligible to receive services from the local school system under federal or state law, and who participate in the tax credit program, remain eligible to receive services from the local school system as provided by federal or state law.
(8) If a parent requests that the student be enrolled in a nonfailing public school within the same local school system, transportation costs to the nonfailing public school shall be the responsibility of the local school system.
(9) The State Department of Education shall promulgate reasonable rules to effectuate the intent of this section. Rules shall include penalties for noncompliance.
(c) There is created within the Education Trust Fund a separate account named the Failing Schools Income Tax Credit Account. The Commissioner of Revenue shall annually certify to the Comptroller the amount of income tax credits due to parents under this section and the Comptroller shall transfer into the Failing Schools Income Tax Credit Account only the amount from sales tax revenues within the Education Trust Fund that *155 is sufficient for the Department of Revenue to use to cover the income tax credits for the applicable tax year. The Commissioner of Revenue shall annually distribute the funds in the Failing Schools Income Tax Credit Account to parents pursuant to this section.
Section 9. (a)(1) A taxpayer who files a state income tax return and is not a dependent of another taxpayer may claim a credit for a contribution made to a scholarship granting organization.
(2) The tax credit may be claimed by an individual taxpayer or a married couple filing jointly in an amount equal to the total contributions made to a scholarship granting organization for educational scholarships during the taxable year for which the credit is claimed up to 50 percent of the tax liability of the taxpayer, not to exceed seven thousand five hundred dollars ($7,500) per taxpayer or married couple filing jointly.
(3) The tax credit may be claimed by a corporate taxpayer in an amount equal to 50 percent of the total contributions made to a scholarship granting organization for educational scholarships during the taxable year for which the credit is claimed up to 50 percent of the tax liability of the taxpayer. The cumulative amount of tax credits issued pursuant to subdivision (2) and this subdivision shall not exceed twenty-five million dollars ($25,000,000) annually. The Department of Revenue shall develop a procedure to ensure that this cap is not exceeded and shall also prescribe the various methods by which these credits are to be issued.
(4) A corporate taxpayer, an individual taxpayer, or a married couple filing jointly may carry forward a tax credit under the tax credit scholarship program for three years.
(b)(1) Administrative accountability standards. All scholarship granting organizations shall do all of the following:
a. Notify the Department of Revenue of their intent to provide educational scholarships.
b. Demonstrate to the Department of Revenue that they have been granted exemption from the federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code.
c. Distribute periodic educational scholarship payments as checks made out and mailed to the school where the student is enrolled.
d. Provide a Department of Revenue approved receipt to taxpayers for contributions made to the scholarship granting organization.
e. Ensure that at least 95 percent of their revenue from donations is spent on educational scholarships, and that all revenue from interest or investments is spent on educational scholarships.
f. Spend each year a portion of their expenditures on educational scholarships for low-income eligible students equal to the percentage of low-income eligible students in the county where the scholarship granting organization expends the majority of its educational scholarships.
g. Ensure that at least 75 percent of first-time recipients of educational scholarships were not continuously enrolled in a private school during the previous year.
h. Cooperate with the Department of Revenue to conduct criminal background checks on all of their employees and board members and exclude from employment or governance any individual who may reasonably pose a risk to the appropriate use of contributed funds.
i. Ensure that educational scholarships are portable during the school year and *156 can be used at any school that accepts the eligible student according to the wishes of the parent. If a student transfers to another school during a school year, the educational scholarship amount may be prorated.
j. Publicly report to the Department of Revenue by June 1 of each year all of the following information prepared by a certified public -accountant' regarding their grants in the previous calendar year:
1. The name and address of the scholarship granting organization.
2. The total number and total dollar amount of contributions received during the previous calendar year.
3. The total number and total dollar amount of educational scholarships awarded during the previous calendar year, the total number and total dollar amount of educational scholarships awarded during the previous year for students qualifying for the federal free and reduced-price lunch program, and the percentage of first-time recipients of educational scholarships who were' enrolled in a public school during the previous year.
k. Ensure educational scholarships are not provided for students to attend a •school with paid staff or board members, or relatives thereof, in common with the scholarship granting organization.
l. Ensure that scholarships are provided in a manner that does not discriminate based on the gender, race, or disability status of the scholarship applicant or his. or her parent.,
m. Ensure that educational scholarships are provided only to students who would otherwise attend a failing school so that the student can attend a nonpublic school or a nonfailing public school.
(2) Financial accountability standards.
a. All scholarship granting organizations shall demonstrate their financial accountability by doing all of the following:
1. Annually submitting to the Department of Revenue a financial information report for the scholarship granting organization that complies with uniform financial accounting, standards established by the Department of Revenue and conducted by a certified public accountant.
2. Having the auditor certify that the report is free of material misstatements.
b. All participating nonpublic schools shall demonstrate financial viability, if they, ai-e to receive donations of fifty thousand dollars ($50,000) or more during the school year, by doing either of the following:
1. Filing with the scholarship granting organization before the start of the school year a surety bond payable to the scholarship granting organization in an amount equal to the aggregate amount of contributions expected to be received during the school year.
2. Filing with the scholarship granting organization before the start of the school year financial information that demonstrates the financial viability of the participating nonpublic school.
(c)(1) Each scholarship granting organization shall collect written verification, from participating nonpublic schools that accept its.educational scholarship students that those schools do all of the following:
a. Comply with all health and safety laws or codes that otherwise apply to non-public schools.
b. Hold a' valid occupancy permit if required by the municipality.
c. Certify compliance with nondiscrimination. policies set forth in 42 USC 1981.
•d. Conduct criminal background checks on employees and then do all of the following:
*157 1. Exclude from employment any person not permitted by state law to work in a public school.
2. Exclude from employment any person who may reasonably pose a threat to the safety of students.
(2)Academic accountability standards. There shall be sufficient information about the academic impact educational scholarship tax credits have on participating students in order to allow parents and taxpayers to measure the achievements of the tax credit scholarship'program, and therefore:
а. Each scholarship granting organization shall ensure that participating schools that accept its educational scholarship shall do all of the following:
1. Annually administer either the state achievement tests or nationally recognized norm-referenced tests that measure learning gains in math and language arts to all participating students in grades that require testing under the accountability testing laws of the state for public schools.
2. Allow costs of the testing requirements to be covered by the educational scholarships distributed by the scholarship granting organizations.
3. Provide the parents of each student who was tested with a copy of the results of the tests on an annual basis, beginning with the first year of testing.
'4. Provide the test results to the Department of Revenue or an organization chosen, by the state on an annual basis, beginning with- the first year of testing.
5. Report student information that allows the state to aggregate data by grade level, gender, family income level, and race.
б. Provide graduation rates of those students benefitting from education scholarships to the Department of Revenue or an organization chosen by the state in a manner consistent with nationally recognized standards.
b. The Department of Revenue or an organization chosen by the Department of Revenue shall do all of the following:
1. Ensure compliance with all student privacy laws.
2. Collect all test results.
3. Provide the test results and associated learning gains to the public via a state website after the third year of test and test-related data collection.- The findings shall be aggregated by the grade level, gender, family income level, number of years of' participation in the tax credit scholarship program, and race of the student.
(d)(1) The Department of Revenue shall adopt rules and procedures consistent with this section as necessary to implement the tax credit scholarship program.
(2) The Department of Revenue shall provide a standardized format for a receipt to be issued by a scholarship granting organization to a taxpayer to indicate the value of a contribution received. The Department of Revenue shall require a taxpayer to provide a copy of the receipt when claiming the tax credit pursuant to this section.
(3) The Department of Revenue shall provide a standardized format for a scholarship granting organization to report the information required in paragraph j. of subdivision (1) of subsection (b).
(4)' The Department of Revenue may conduct either a financial review or audit of a scholarship granting organization if possessing evidence of fraud.
(5) The Department of Revenue may bar a scholarship granting organization from participating in the tax credit scholarship program if the Department of Rev *158 enue establishes that the scholarship granting organization has intentionally and substantially failed to comply with the requirements in subsection (b) or subsection (c).
(6) If the Department of Revenue decides to bar a scholarship granting organization from the tax credit scholarship program, the Department of Revenue shall notify affected educational scholarship students and their parents of the decision as quickly as possible.
(7) The Department of Revenue shall publish and routinely update, on the website of the depax-tment, a list of scholarship gx-anting organizations in the state, by county.
(e)(1) All schools participating in the tax credit scholarship program shall be required to operate in Alabama.
(2) All schools participating in the tax credit scholarship program shall comply with all state laws that apply to public schools regarding criminal background checks for employees and exclude from employment any person not permitted by state law to work in a public school.
(f) The tax credit provided in this section may be first claimed for the 2013 tax year.
Section 10. The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, that declaration shall not affect the part which remains.
Section 11. This act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law.

APPENDIX C

HB 658 (amending HB 84)
ENROLLED, An Act,
To amend Sections 4, 5, 8, and 9 of the Alabama Accountability Act of 2013, Act 2013-64, 2013 Regular Session (Acts 2013); to revise definitions; to further limit what may be contained in a school flexibility contract; to provide for the calculation of tax credits for parents of students enrolled in or assigned to attend a failing school; to provide for the retention of certain funds by a failing school; to provide for treatment of students with disabilities; to provide no public or nonpublic school would be required to enroll a student; to prohibit discrimination; to revise the tax credit for corporate donors to scholarship programs; to provide for i-etroactive effect; and to further provide for the manner of payment of scholarships.
BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
Section 1. Sections 4, 5, 8, and 9 of the Alabama Accountability Act of 2013, Act 2013-64, 2013 Regular Session (Acts 2013), are amended to read as follows:
“Section 4. For the purposes of this act, the following terms shall have the following meanings:
“(1) EDUCATIONAL SCHOLARSHIPS. Grants made by a scholarship granting organization to---any--quaiifying school to cover all or part of the tuition and mandatory fees charged by a at the qualifying school for to an eligible student receiving a scholarship.
“(2) ELIGIBLE STUDENT. A student who satisfies all of the following:
“a. Is a member of a household whose total annual income the year before he or she receives an educational scholarship under this program does not exceed an amount equal to 150 percent of the median household income. Once a student receives an educational scholarship under this program, the student shall remain eligible regardless of household income until *159 the student graduates high school or reaches 19 years of age.
“b. Was eligible to attend a public school in the preceding semester or is starting school in Alabama for the first time.
“c. Resides in Alabama while receiving an educational scholarship.
“(3) FAILING SCHOOL. A public K-12 school (i) that is labeled as persistently low-performing by the State Department of Education, in the then most recent United States Department of Education School Improvement Grant application; (ii) that' is designated as a failing school by the State Superintendent of Education; or (Hi) that does not exclusively serve a special population of students and, until June 1, 2017, is has been listed three or more times during the then-most recent six years in the lowest ten six percent of public K-12 schools on the state standardized assessment in reading and math or, on or after June 1, 2017,- that has, during the then-most recent three years, earned at least one a grade of “F” or, during the then-most recent four years, earned at least three consecutive grades of “D” on the school grading system developed pursuant to Section 16-6C-2, Code of Alabama 1975, or that is designated a failing school by the State Superintendent of Education. In the event sufficient rules required to implement the grading system provided for by Section 16-6C-2, Code of Alabama 1975, have not been implemented pursuant to the Alabama Administrative Procedure Act in time to provide a sufficient record to implement this subdivision by June 1, 2017, then a failing school shall be a school that has been listed in the lowest 10 percent of public K-12 schools in the state standardized assessment in reading and math.
“(4) FLEXIBILITY CONTRACT. A school flexibility contract between the local school system and the State Board of Education wherein a local school system may apply for programmatic flexibility or budgetary flexibility, or both, from state laws, regulations, and policies, including regulations and policies promulgated by the State Board of Education and the State Department of Education.
“(5) INNOVATION PLAN. The request of a local school system for flexibility and plan for annual accountability measures and five-year targets for all participating schools within the school system.
“(6) LOCAL BOARD OF EDUCATION. A city or county board of education that exercises management and control of a local school system pursuant to state law. 1
“(7) LOCAL SCHOOL SYSTEM. A public agency that establishes and supervises one or more public schools within its geographical limits pursuant to state law.
“(8) LOW-INCOME ELIGIBLE STUDENT. A student of a family with income equal to or less than two times the federal poverty level.
“(9) NONPUBLIC SCHOOL. Any nonpublic or private school, including parochial schools, not under the jurisdiction of the State Superintendent of Education and the State Board of Education, providing educational services to children. A nonpublic school is accredited by a state recognized accrediting agency that provides education to elementary or secondary, or both, students and has notified the State Department of Revenue of its intention to participate in the scholarship program and comply with the requirements of the scholarship program. A nonpublic school does not include home schooling.
“(10) PARENT. The parent or legal guardian of a student, with authority to act *160 on behalf of the student, who claims the student as a dependent on his or her federal Alabama state income tax return.
“(11) QUALIFYING SCHOOL. Either a public school outside of the resident school district that is not considered failing under either state or federal standards or any nonpublic school as defined in this act or that satisfies the compulsory attendance requirements provided in Section 16-28-7, Code of Alabama 1975. A qualified nonpublic school shall, be accredited by one of the six regional accrediting agencies or, if not so accredited, shall satisfy that satisfies all of the following conditions:
“a. Be Has been in existence for at least three years.
“b. Have Has daily attendance of at least 85 percent, over a two-year period.
“c. Have Has . a minimum . 180-day school year, or its hourly equivalent. ■
“d. Have Has a day length of at least six and one-half hours.
“e. Require Requires all students to take the Stanford Achievement Test, or its equivalent..
“f. Require Requires all candidates for graduation to take the American College Test before graduation.
“g. Require Requires students in high school in grades nine through 12 to earn a minimum of 24 Carnegie .credits before graduating, including 16 credits in core subjects and additional requirements in health and physical education, - fine arts, computer studies, and foreign language.
“h. Not Does not subject special education students to the same testing or curricular requirements as regular education students if it is not required in the individual plan for the student.
“i. Maintain Maintains a current website that describes the school and the instructional program of the school.
■ “j. Annually affirm affirms on forms prescribed by the scholarship granting organization and the department its status financially and academically and provide other relative information as required by the scholarship granting organization or as otherwise required in this act.
“(12) SCHOLARSHIP GRANTING ORGANIZATION. An organization that provides or is approved to ■ provide educational scholarships to students attending qualifying schools of their parents’ choice.
“(13-)-SCH0QL-ADMINISTRAT0R. A ■loeal-s-uper-mtendent-of-education' on local school-principal,-unless otherwise specified.
“Section 5.. (a) Pursuant to this act, to be considered as an innovative school system, a local school system shall successfully comply with the requirements and procedures set forth by the State Department of Education regarding school flexibility contracts, which include, but are not limited to:
“(1) Submission to the State Department of Education of a letter of intent to pursue a school flexibility contract.
“(2) Submission to the State Department of Education of a resolution adopted by the local board of education supporting the intent of the local school system to pursue a school flexibility contract.
“(3) Submission to the State Department of Education of a document of assurance stating that the local board of education shall provide consistency in leadership and a commitment to state standards, assessments, and academic rig- or.
“(4) Submission to the State Board of Education of a resolution adopted by the local board of education supporting the *161 flexibility contract proposal and the anticipated timeline of the local school system.
“(b) Pursuant to State Board of Education rules, each local school system shall provide an opportunity for full discussion and public input, including a public hearing, before submitting a school flexibility contract proposal to the State Board of Education.
“(c) A local school system shall ensure that its school flexibility contract proposal and innovation plan is easily accessible to the general public on the website of the local school system.

“(d) No school flexibility contract proposal or innovation plan shall be used to allow the collection or dissemination of data in a manner that violates the privacy rights of any student or employee.

“Section 8. (a) To provide educational flexibility and state accountability for students in failing schools:
“(1) For tax years beginning on and after January 1, 2013, an Alabama income tax credit is made available to the parent of a student enrolled in or assigned to attend a failing school to help offset the cost of transferring the student to a non-failing public school or nonpublic school of the parent’s choice. The income tax credit shall be an amount equal to 80 percent of the average annual state cost of attendance for a public K-12 student during the applicable tax year or the actual cost of, attending a nonfailing public school or nonpublic school, whichever is less. The actual cost of attending a nonfailing public school or nonpublic school shall be calculated by adding together any tuition amounts or mandatory fees charged by the school to the student as a condition of enrolling or of maintaining enrollment in the school. The average annual state cost of attendance for a public K-12 ■ student shall be calculated by dividing the state funds appropriated to the Foundation Program pursuant to Section 16-13-231(b)(2) by the total statewide number of pupils in -average daily membership during the first'20 scholastic days follounng Labor Day of the preceding school year. For each student who was enrolled in and attended a failing school the previous semester whose parent receives an income tax credit under this section, an amount equal to 20 percent of the average annual state cost of attendance for a public K-12 student during the applicable tax year shall be allocated, for as long as the parent receives the tax credit, to the failing school from which the student transferred if the student transfers to and remains enrolled in a nonpublic school. No such allocation shall be made in. the event the student transfers to or enrolls in a nonfailing public school. The Department of Education shall determine the best method of ensuring that the foregoing allocation provisions are properly implemented. A parent is allowed a credit against income tax for each 'taxable year under the terms established in this section. If income taxes owed by the such a parent are less than the total credit allowed under this subsection, the taxpayer shall be entitled to a refund or rebate, as the case may be, equal to the balance of the unused credit with respect to that taxable year.
“(2) Any income tax credit due a parent under this section shall be granted or issued to the parent only upon his or her making application therefor, at such time and in such manner as may be prescribed from time to time by the Department of Revenue. The application process shall include, but not be limited to, certification by the parent that the student was enrolled in or was assigned to attend a failing school, certification by the parent that the student was subsequently transferred to, *162 and was enrolled and attended, a nonfail-ing public school or nonpublic school of the parent’s choice, and proof, satisfactory to the Department of Revenue, of the actual cost of attendance for the student at the nonfailing public school or nonpublic school. For purposes of the tax credit authorized by this section, costs of attendance does not include any such costs incurred for an academic year prior to the 2013-2011 academic year. The Department of Revenue shall also prescribe the various methods by which income tax credits are to be issued to taxpayers. Income tax credits authorized by this section shall be paid out of sales tax collections made to the Education Trust Fund, and set aside by the Comptroller in the Failing School Schools Income Tax Credit Account created in subsection (c), in the same manner as refunds of income tax otherwise provided by law, and there is hereby appropriated therefrom, for such purpose, so much as may be necessary to annually pay the income tax credits provided by this section.
“(3) An application for an income tax credit authorized by this section shall be filed with the Department of Revenue within the time prescribed for filing petitions for refund under Section 40-2A-7, Code of Alabama 1975.
“(4) The Department of Revenue shall promulgate reasonable rules to effectuate the intent of this section subsection.
“(b)(1) The parent of a public school student may request and receive an income tax credit pursuant to this section to reimburse the parent for costs associated with transferring the student from a failing school to a nonfailing public school or nonpublic school of the parent’s choice, in any of the following circumstances:
“a. By assigned school attendance area, if the student spent the prior school year in attendance at a failing school and the attendance of the student occurred during a school year in which the designation was in effect.
“b. The student was in attendance elsewhere in the Alabama public school system and was assigned to a failing school for the next school year.
“c. The student was notified that he or she was assigned to a failing school for the next school year.
“(2) This section does not apply to a student who is enrolled in the Department of Youth Services School District.
. “(3) For the purposes of continuity of educational choice, the tax credit shall be available to parents for those grade levels of the failing school from which the student transferred. The parent of a student who transfers from a failing school may receive income tax credits for those grade levels enrolled in and attended in the non-failing public school or nonpublic school of the parent’s choice transferred to that were included in the failing school from which the student transferred, whether or not the failing school becomes a nonfailing school during those years. The parent of such a student shall no longer be eligible for the income tax credit return to his or-her-original local-school system of-attendance when he or she after the student completes the highest grade level in which he or she would otherwise have been enrolled at of the failing school transferred from in- the — nonfailing ■public school or nonpublic school — of the ■ parent-s-ehoiee. Notwithstaitding the foregoing, as long as the student remains enrolled in or assigned to attend a failing school If -the public school the-student returns to-is-a failing-school, the parent may again transfer the student to a nonfailing public school or nonpublic school of the parent’s choice and request and receive an income tax credit as provided in this section.
*163 “(4) A local school system, for each student enrolled in or assigned to a failing school, shall do all of the following:
“a. Timely notify the parent of the student of all options available under this section as soon as the school of attendance is designated as a faffing school.
“b. Offer the parent of the student an opportunity to enroll the student in another public school within the local school system that is not a faffing school or a failing school to which the student has been assigned.
“(5) The parent of a student enrolled in or assigned to a school that has been designated as a failing school, as an alternative-to-par-agraph-b. of subdivision (4),-may choose-to-enroll-the student in and trans-por-t-the-student-to-a who decides to transfer the student to a nonfailing public school, shall first attempt to enroll the student in a nonfailing public school within the same local system in which the student is already enrolled or assigned to attend before attempting to enroll the student in a nonfailing public school that has available space in any other local school system in the statey — and—'⅛⅞⅛ A local school system is willing to may accept the student on whatever terms and conditions the system establishes and report the student for purposes of the local school system’s funding pursuant to the Foundation Program.
“(6) For students in the local school system who are participating in the tax credit program, the local school system shall provide locations and times to take all statewide assessments required by law.
“(7) Students with disabilities who are eligible to receive services from the local school system under federal or state law, and who participate in the tax credit program, remain eligible to receive services from the local school system as provided by federal or state law.
“(8) If a parent requests -that- the student be enrolled enrolls a student in a nonfailing public school within the samé local school system, trod that system provides transportation services for other enrolled students, transportation costs to the nonfailing public school shall be the responsibility of the local school system. Local school systems may negotiate transportation options with a parent to minimize system costs. If a parent enrolls a student in a nonpublic school or in a nonfailing public school within another local school system, regardless of whether that system provides transportation services for other enrolled students, transportation of the student shall be the responsibility of the parent.
“(9) The State Department of Education shall promulgate reasonable rules to effectuate the intent of this sub section. Rules shall include penalties for noncompliance.
“(c) There is created within the Education Trust Fund a separate account named the Faffing Schools Income Tax Credit Account. The Commissioner of Revenue shall annually certify to the Comptroller the amount of income tax credits due to parents under this section and the Comptroller shall transfer into the Faffing Schools Income Tax Credit Account only the amount from sales tax revenues within the Education Trust Fund that is sufficient for the Department of Revenue to use to cover the income tax credits for the applicable tax yeax*. The Commissioner of Revenue shall annually distribute the funds in the Faffing Schools Income Tax Credit Account to parents pursuant to this section.

“(d) (1) Nothing in this section or act shall be construed to force any public school, school system, or school district or 
*164
any nonpublic school, school system, or school district to enroll any student.

“(2) A public school, school system, or school district or any nonpublic school, school system, or school district may develop the terms and conditions under which it will allow a student whose parent receives an income tax credit pursuant to this section to be enrolled, but such terms and, conditions may not discriminate on the basis of the face, gender, religion, col- or, disability status, or ethnicity of the student or of the student’s parent.

“(B) Nothing in this section shall be construed to authorize the violation of or supersede the authority of any court ruling that applies to the public school, school system, or school district, specifically any federal court order related to the desegregation of the local school system’s student population.

“Section 9. (a)(1) A taxpayer who files a state income tax return and is not a dependent of another taxpayer may claim a credit for a contribution made to. a scholarship granting organization.
“(2) The tax credit may be claimed by an individual taxpayer or a married couple filing jointly in an amount.equal to the total contributions made to a scholarship granting ■ organization for educational scholarships during the taxable year for which the credit is claimed up to 50 percent of the tax liability of the taxpayer, not to exceed seven .thousand five hundred dollars ($7,500) per. taxpayer or married couple filing jointly.
“(3) The tax credit may be claimed by a corporate taxpayer in ah amount equal to 50 100 percent of the total contributions made to a scholarship granting organization for- educational scholarships during the taxable year for which the credit is claimed up to-50 percent of the tax liability of the taxpayer. The cumulative amount of-tax credits issued pursuant to subdivision (2) and this subdivision shall not exceed twenty-five million dollars ($25,000,000) annually. The Department of Revenue shall develop a procedure to ensure that this cap is not exceeded and shall also prescribe the various methods by which these credits are to be issued.
“(4) A corporate taxpayer, an individual taxpayer, or a married couple filing jointly may carry forward a -tax credit under the tax credit scholarship program for three years.
“(b)(1) Administrative accountability standards. All scholarship granting organizations shall do all of the following:
“a. Notify the Department of Revenue of their intent to provide educational scholarships.
“b. Demonstrate to the Department of Revenue that they have been granted ex-' emption from the federal income tax as an organization described in Section 50Í(c)(3) of the Internal Revenue Code.
“c. Distribute. periodic educational scholarship payments as checks made out and mailed to the .school where the student is enrolled.
“d. Provide a Department of Revenue approved receipt to taxpayers for contributions made to the scholarship granting organization.
“e. Ensure that at least 95 percent of their revenue from donations is spent on educational scholarships, and that all revenue from interest or investments is spent on educational scholarships.
“f. Spend each year- a portion of their expenditures on educational scholarships for low-income eligible students equal to the percentage of low-income eligible students in the county where the scholarship *165 granting organization expends the majority of its educational scholarships.
“g. Ensure that at least 75 percent of first-time recipients of educational scholarships were not continuously enrolled in a private school during the previous year.
“h. Cooperate with the Department of Revenue to conduct criminal background checks on all of their employees and board members and exclude from employment or governance any individual who may reasonably pose a risk to the appropriate use of contributed funds.
“i. Ensure that educational scholarships are portable during the school year and can be used at any qualifying school that accepts the eligible student according to the wishes of the parent. If a student transfers to another qualifying school during a school year, the educational scholarship amount may be prorated.
“j. Publicly report to the Department of Revenue by June 1 of each year all of the following information prepared by a certified public accountant regarding their grants in the previous calendar year:
“1. The name and address of the scholarship 'granting .organization.
“2. The total number and total dollar amount of contributions received during the previous calendar year.
“3. The total number and total dollar amount of educational scholarships awarded during the previous calendar year, the total number and total dollar amount of educational scholarships awarded during the previous year for students qualifying for the federal .free and reduced-price lunch program, and the percentage of first-time recipients of educational scholarships who were enrolled in a public school during the previous year.
“k. Ensure educational scholarships are not provided for students to attend a school with paid staff or board members, or relatives thereof, in common with the scholarship granting organization.
' “1. Ensure that scholarships are provided in a manner that does not discriminate based on the gender, race, or disability status of the scholarship applicant or his or her parent.
“m. Ensure that educational scholarships are provided only to students who would otherwise attend a failing school so that the student can attend a nonpublic school or a nonfailing public school. Provided, however, that any scholarship funds unaccounted for on September 15th of each year may be made available to low-income eligible students to defray the co$ts of attending a qualifying school>. whether or not the student is assigned to a failing school.

“n. Ensure that no donations are directly made to benefit specifically designated scholarship recipients.

“(2) Financial accountability standards.
“a. All scholarship granting organizations shall demonstrate then1 financial accountability by doing all of the following:
“T. Annually submitting to the Department of Revenue a financial information report for the scholarship granting organization that complies with uniform financial accounting standards established by the Department of Revenue and conducted by a certified public accountant.
“2. Having the auditor certify that the report is free of material misstatements.
“b. All participating nonpublic schools shall demonstrate financial viability, if they are to receive donations of fifty thousand dollars ($50,000) or more during the school year, by doing either of the following:
*166 “1. Filing with the scholarship granting organization before the start of the. school year a surety bond payable to the scholarship granting organization in an amount equal to the aggregate amount of contributions expected to be received during the school year.
“2. Filing with the scholarship granting organization before the start of the school year financial information that demonstrates the financial viability of the participating nonpublic school.
“(c)(1) Each seholai-ship granting organization shall collect written verification from participating nonpublic schools that accept its educational scholarship students that those schools do all of the following:
“a. Comply with all health and safety laws or codes that otherwise apply to nonpublic schools.
“b. Hold a valid occupancy permit if required by the municipality.
“c. Certify compliance with nondiscrimination policies set forth in 42 USC 1981.
“d. Conduct criminal background checks on employees and then do all of the following:
“1. Exclude from employment any person not permitted by state law to work in a public school.
“2. Exclude from employment any person who may reasonably pose a threat to the safety of students.
“(2) Academic accountability standards. There shall be sufficient information about the academic impact educational scholarship tax credits have on participating students in order to allow parents and taxpayers to measure the achievements of the tax credit scholarship program, and therefore:
“a. Each scholarship granting organization shall ensure that participating schools that accept its educational scholarship shall do all of the following:
“1. Annually administer either the state achievement tests or nationally recognized norm-referenced tests that measure learning gains in math and language arts to all participating students in grades that require testing under the accountability testing laws of the state for public schools.
“2. Allow costs of the testing requirements to be covered by the educational scholarships distributed by the scholarship granting organizations.
“3. Provide the parents of each student who was tested with a copy of the results of the tests on an annual basis, beginning with the first year of testing.
“4. Provide the test results to the Department of Revenue or an organization chosen -by-the state on an annual basis, beginning with the first year of testing.
“5. Report student information that allows the state to aggregate data by grade level, gender, family income level, and race.
“6. Provide graduation rates of those students benefitting from education scholarships to the Department of Revenue or an organization chosen by the state in a manner consistent with nationally recognized standards.
“b. The Department of Revenue or an organization chosen by the Department of Revenue shall do all of the following:
“1. Ensure compliance with all student privacy laws.
“2. Collect all test results.
“3. Provide the test results and associated learning gains to the public via a state website after the third year of test and test-related data, collection. The findings shall be aggregated by the grade level, gender, family income level, number of *167 years of participation in the tax credit scholarship program, and race of the student.
“(d)(1) The Department of Revenue shall adopt rules and procedures consistent with this section as necessary to implement the- tax ■ credit--sc-holar-ship — program.
“(2) The Department of Revenue shall provide a standardized format for a receipt to be issued by a scholarship granting organization to a taxpayer to indicate the value of a contribution received. The Department of Revenue shall require a taxpayer to provide a copy of the receipt when claiming the tax credit pursuant to this section.
“(3) The Department of Revenue shall provide a standardized format for a scholarship granting organization to report the information required in paragraph j. of subdivision (1) of subsection (b).
“(4) The Department of Revenue may conduct either a financial review or audit of a scholarship granting organization if possessing evidence of fraud.
“(5) The Department of Revenue may bar a scholarship granting organization from participating in the tax credit scholarship program if the Department of Revenue establishes that the scholarship granting organization has intentionally and substantially failed to comply with the requirements in subsection (b) or subsection (c).
“(6) If the Department of Revenue decides to bar a scholarship granting organization from the tax credit scholarship program, the Department of Revenue shall notify affected educational scholarship students and their parents of the decision as quickly as possible.
“(7) The Department of Revenue shall publish and routinely update, on the website of the department, a list of scholarship granting organizations in the state, by county.
“(e)(1) All schools participating in the tax credit scholarship program shall be required to operate in Alabama.
“(2) All schools participating in the tax credit scholarship program shall comply with all state laws that apply to public schools regarding criminal background checks for employees and exclude from employment any person not permitted by state law to work in a public school.
“(f) The tax credit provided in this section may be first claimed for the 2013 tax year but may not be darned for any tax year prior to the 2013 tax year.

“(g) (1) Nothing in this section shall be construed to force any public school, school system, or school district or any nonpublic school, school system, or school district to enroll any student.

“(2) A public school, school system, or school district or any nonpublic school, school system, or school district may develop the terms and conditions under which it will allow a student who receives a scholarship from a scholarship granting organization pursuant to this section to be enrolled, but such terms and conditions may not discriminate on the basis of the race, gender, religion, color, disability status, or ethnicity of the student or of the student’s parent.

“(3) Nothing in this section shall be construed to authorize the violation of or supersede the authority of any court ruling that applies to the public school, school system, or school district, specifically any federal court order related to the desegregation of the local school system’s student population.”

*168 Section 2. The provisions of this act are retroactive to March 14,2013.
Section 3. Nothing in this act shall affect or change the athletic eligibility rules of student athletes governed by the Alabama High School Athletic Association or similar association.
Section 4. This apt shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law.

APPENDIX D

Act No. 2014-346
ENROLLED, An Act,
To adopt and incorporate into the Code of Alabama 1975,. those general and permanent laws of the state enacted during the 2013 Regular Session as contained in the 2013 Cumulative Supplement to certain volumes of the code and 2013 Replacement Volumes 16A, 19A, and 22; to initially adopt and incorporate into the Code of Alabama 1975, 2013 Volume 22H (Local Laws Greene — Jackson Counties) and to adopt and incorporate into the Code of Alabama 1975, 2013 Cumulative Supplements to local law volumes; to make certain corrections in the replacement volumes and certain volumes of the cumulative supplement; to specify that this adoption and incorporation constitute a continuous systematic codification of the entire Code of Alabama 1975, and that this act is a law that adopts a code; to declare that the Code Publisher has certified it has discharged its duties regarding the replacement volumes; to expressly provide that this act does not affect any other 2014 session statutes; and -to specify the duties of the Secretary of State regarding the custody of these cumulative supplements, replacement volumes, and initial volume. BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
Section 1. (a) Those general and permanent laws of the state enacted during the 2013 Regular Session as contained in the 2013 Cumulative Supplements to Volumes 3 to 16, inclusive, Volumes 17 to. 19, inclusive, Volumes 20 to 21A, inclusive, and Volume 22A and the 2013 Replacement Volumes'16A, 19A, and 22 and the additions and deletions made by the Code Commissioner for editorial purposes, as édited and published by West Group, as the Code Publisher, which volumes of the 2013 Cumulative Supplement and 2013 Replacement Volumes are identified and authenticated by the Great Seal of the State of Alabama placed upon the front and back of each of the volumes of the cumulative supplement and upon the first inside page and the last inside, page of the replacement volume, are adopted and incorporated into the Code of Alabama 1975.
(b) The following corrections are made to the 2013 Cumulative Supplements:
(1) Section 6-5-752, 2013 Cumulative Supplement to Volume 5, page 160. To correct a publishing misprint in subdivision (7), delete the words “RESPONSE PERIOD.” in the definition and replace it with “REPOSE PERIOD.”
(2) Section 12-19-91, 2012 Replacement Volume 11A, page 198, to correct a publishing error which resulted in the inadvertent deletion of language in subdivision (1) of subsection (c), at the end of the subdivision after “notice of appeal” restore the following:
.$100.00
(3) Section 12-25-32, 2012 Replacement Volume 11A, page 707, to correct an internal reference in subdivision (7), to reflect the renumbering of the subdivisions in this section in Act 2012-473, after the word *169 “subdivision” delete “(12)” and insert the following: •
(13)
(4) Section 23-1-181, 2013 Cumulative Supplement to Volume 15, pages 19 and. 20, to renumber various internal citations to code sections that have been renumbered and to delete references to sections that have been repealed to conform with the repeal and replacement of various sections in Title 40 of the code in Act 2011-565:
In subdivision (4) of .subsection (a), delete “Division 2 of Article 2 of Chapter 17 of Title 40” and replace it with “Section 40-17-359”
In paragraph a. of subdivision (5) of subsection (a), delete “Section 40-17-31, as amended,” and replace it with “subdivision (1) of subsection (a) of Section 40-17-325”
In subdivision (6) of subsection (a) after “less any refunds of proceeds pursuant to the provisions of’ delete “Article 3 of’ and after “Title 40” delete “, or pursuant to the provisions of either of Divisions 3 and 4 of Article 2 of Chapter 17”
In subdivision (7) of subsection (a), delete “Section 40-17-72” and replace it with “subsection (c) of Section 40-17-359”
In paragraph a. of subdivision (3) of subsection (b), delete “Article 1 of Chapter 17 of Title 40” and replace it with “subdivision (2) of subsection (a) of Section 40-17-325”
(5) In Section 27-4-2, 2013 Cumulative Supplement to Volume 16, page 17, to correct a publishing error which resulted in the inadvertent deletion of paragraph d. of subdivision (1) of subsection (a), on the line after paragraph c., restore the following language:
d. Reinstatement
fee.500
(6) Section 27-44-13, 2007 Replacement Volume 16, page 896, to renumber an internal citation to reflect the relettering of Section 27-44-9 in Act 2012-319, in subsection (a) replace “Section 27-44-9(g)” with “Section 27-44-9(h)”.
(7) In Chapter 9E of Title 38 comprised of Sections 38-9E-1 to 38-9E-12, inclusive, 2013 Cumulative Supplement, pages 13 to 18, inclusive, to redesignate Chapter 9E as Article 9 of Chapter 6 of Title 13A and to renumber Sections 38-9E-1 to 38-9E-12, inclusive, as follows: Section 38-9E-1 as 13A-6-190; Section 38-9E-2 as 13A-6-191; Section 38-9E-3, as 13A-6-192; Section 38-9E-4 as 13A-6-193; Section 38-9E-5 as 13A-6-194; Section 38-9E-6 as 13A-6-195; Section 38-9E-7 as 13A-6-196; Section 38-9E-8 as 13A-6-197; Section 38-9E-9 as 13A-6-198; Section 38-9E-10 as 13A-6-199; Section 38-9E-11 as 13A-6-200; and Section 38-9E-12 as 13A-6-201.
’ (8) Section 40-13-6, 2013 Cumulative Supplement to Volume 21, page 155, to correct a clerical error and reference the intended subsection and subdivision, in the first sentence of subdivision (2) of subsection (e), replace the language “subsection (c)(1)” with “subdivision (1)”.
Section 2. Those local and permanent laws of the state previously enacted and contained in initial 2013 Volume 22H (Local Laws Greene — Jackson Counties) and the local and permanent laws pertaining to various counties enacted during the 2013 Regular Session as contained in the 2013 Cumulative Supplement to Volumes 22B, 22C, 22D, 22E, 22F, and 22G and the additions and deletions made by the Code Commissioner for editorial purposes, as edited and published by West Group, as the Code Publisher, which volumes of the 2013 Cumulative Supplement are identified and-authenticated by the Great Seal of the State of Alabama placed upon the front *170 and back of each of the volumes of the cumulative supplement, are adopted and incorporated into the Code of Alabama 1975.
Section 3. The adoption and incorporation of the supplements and replacement volumes specified in this act shall constitute a continuous systematic codification of the entire Code of Alabama 1975, for purposes of Section 85 of the Official Recompilation of the Constitution of Alabama of 1901, as amended. This act is a law that adopts a code for the purposes of Section 45 of the Official Recompilation of the Constitution of Alabama of 1901, as amended.
Section 4. It is declared that West Group, as the Code Publisher, has certified that it has discharged its duties and responsibilities to edit and publish 2013 Replacement Volumes 16A, 19A, and 22 of the Code of Alabama 1975, by combining the material in the previous bound volumes with the material contained in the cumulative supplement without making substantive changes, but making, under the supervision and pursuant to the direction of the Code Commissioner, nonsubstantive changes and corrections as may have resulted from changes in reference numbers, changes of names and titles of governmental departments, agencies, and officers, typographical errors, grammatical changes, and misspellings.
Section 5. The adoption of this act shall not repeal, supersede, amend, or in any other way affect any statute enacted into law during any 2014 session of the Legislature.
Section 6. Upon passage and approval of this act, the duly authenticated volumes of the 2013 Cumulative Supplements and the 2013 Replacement Volumes shall be transmitted to the Secretary of State, who shall file the volumes of the supplements and the replacement volumes in that office. The volumes of the supplements and replacement volumes shall not be removed from the office of the Secretary of State, but the Secretary of State, upon request, under proper certificate and seal of that office, shall certify any part or parts thereof upon payment of the fee specified by law for similar services.
Section 7. This act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law.